**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. 24-31596** |
| **MMA LAW FIRM, PLLC** | § | |
| | § | |
| **DEBTOR** | § | |
| | § | |
| **MMA LAW FIRM, PLLC** | § | |
| | § | |
| **Plaintiff** | § | **ADVERSARY CASE NO.** |
| **v.** | § | |
| | § | |
| **CRISTOBAL M. GALINDO, P.C.** | § | |
| | § | |
| | § | |
| | § | |
| **Defendant** | § | |

**COMPLAINT**

MMA Law Firm, PLLC Plaintiff and/or Debtor, files this Complaint against Cristobal M. Galindo, PC, pursuant to FED. R. BANKR. P. 7001(1) and (7), requesting actual and punitive damages, equitable relief, and respectfully shows the Court as follows:

**JURISDICTION, VENUE AND PARTIES**

1. This is an adversary proceeding brought by the Debtor pursuant to 11 U.S.C. §§ 541, 542, 544, 548, and 550. The Debtor seeks, among other relief, turnover of estate property, a declaratory judgment regarding ownership of certain funds, avoidance of fraudulent transfers, and damages for breach of contract.

2. This Court has subject matter jurisdiction over this adversary proceeding, pursuant to 28 U.S.C. §§ 157 and 1334(b).

3. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (2) and

this Court may enter a final order consistent with these statutes and Article III of the United States Constitution.

4. Venue is proper in the Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**"), pursuant to 28 U.S.C. § 1409.

5. MMA Law Firm, PLLC is the Debtor in Case No. 24-31596 pending in the Southern District of Texas and can be served through its undersigned proposed counsel.

6. Cristobal M. Galindo, PC can be served with this Complaint through Cristobal M. Galindo at 4151 Southwest Fwy, Suite 602, Houston, Texas 77027.

7. MMA Law Firm, PLLC (the, **"Debtor"**) hereby states that it consents to the entry of final orders or judgments by the Bankruptcy Court if it is determined that the Bankruptcy Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## RELEVANT FACTS

### RELEVANT BACKGROUND FACTS

8. MMA Law Firm, PLLC (**"MMA"** or **"Debtor"**) is a Texas-based litigation firm that represented thousands of clients in hurricane insurance claims following Hurricanes Laura, Delta, Zeta, and Ida (collectively, the **"Hurricane Cases"**).

9. In a substantial number of the Hurricane Cases, MMA entered into agreements with Cristobal M. Galindo, P.C. **("Galindo")**, under which both firms agreed to represent the clients on a contingency fee basis (the **"MMA/Galindo Cases"**).

10. Despite the fee-sharing arrangements, MMA performed all of the legal work in the MMA/Galindo Cases. MMA's attorneys drafted pleadings, conducted discovery, managed litigation

strategy, settled cases, and bore the costs of litigation.

11. Notwithstanding Galindo's lack of involvement in the legal work, MMA transferred approximately $683,000 to Galindo in connection with the MMA/Galindo Cases (the **"Galindo Transfers"**), even though Galindo rendered no legal services on behalf of the clients and incurred no litigation expenses.

**ORDERS ENTERED BY LOUISIANA DISTRICT COURT JUDGES**

12. On March 3, 2023, Judge James D. Cain, Jr., a United States district judge of the United States District Court for the Western District of Louisiana, issued an order suspending the licenses of all attorneys **affiliated** with the Debtor for ninety days (**"Suspension Order"**).

13. Pursuant to the Suspension Order, the Debtor was ordered, among other things, to notify the MMA Clients of the suspension and that they had the option of either retaining new counsel or remaining with the Debtor.

**GALINDO 'S DEALINGS WITH SUCCESSOR LAW FIRMS**

14. Following the issuance of the Suspension Order, Galindo engaged in direct negotiations with several third-party law firms (the **"Successor Firms"**) to facilitate the transfer of Hurricane Cases previously handled by MMA. These Successor Firms include, but are not limited to, Daly & Black, Alvendia, Kelly & Demarest, LLC (**"AKD"**), and Irpino Law Firm, LLC ("**Irpino**").

15. As part of these arrangements, the Successor Firms assumed responsibility for hundreds of the MMA/Galindo Cases with the express understanding that MMA would be compensated for the legal work it performed and the litigation expenses it incurred prior to the transfer.

16. To date, MMA is aware that Galindo has received the following funds from the Successor Firms in connection with the transferred cases (collectively, the **"Successor Firm Transfers**"):

- $11,000.00 from Daly & Black;

- $44,035.18 from AKD; and
- $3,289.00 from Irpino.

17. Upon information and belief, Galindo has received additional, undisclosed compensation from other Successor Firms beyond the payments listed above. Despite repeated inquiries from MMA, Galindo has refused to fully disclose the total amount of compensation received or identify all firms from which such funds were obtained.

18. Galindo has failed to remit to MMA any portion of the funds received from Daly & Black, AKD, or Irpino. Nor has he turned over any additional funds received from other Successor Firms.

**SETTLEMENTS REACHED WITH AKD AND GALINDO**

19. After the commencement of its Chapter 11 bankruptcy case, the Debtor initiated adversary proceedings against over a dozen Successor Firms, seeking turnover of attorneys' fees and litigation expenses earned in the Hurricane Cases.

20. Prior to initiating adversary proceedings against AKD and Irpino, the Debtor engaged in extensive, months-long negotiations with both firms regarding the allocation of attorneys' fees and costs in the MMA/Galindo Cases that were subsequently transferred to their respective law firms.

21. On August 15, 2025, MMA filed a motion to approve a settlement with Irpino. Under the terms of the proposed compromise, Irpino agreed to deposit $81,413.21 into the registry of the Bankruptcy Court. This amount represents twenty-five percent of the total attorneys' fees Irpino received in certain MMA/Galindo Cases that were referred to them by Galindo (the **"Irpino Deposited Funds"**). The purpose of this settlement was to allow Irpino to withdraw from the dispute between MMA and Galindo and allow the Bankruptcy Court to determine the proper allocation of these funds.

22. On the same day, MMA filed a substantially similar motion to approve a settlement with AKD. Under that agreement, AKD agreed to deposit $153,743.52 into the Court registry for the same purpose and on the same terms as the Irpino settlement (the **"AKD Deposited Funds"**).

23. The AKD Deposited Funds and the Irpino Deposited Funds are collectively referred to as the "**Deposited Funds.**"

24. The settlement agreements with both AKD and Irpino also provide that twenty-five percent of all future attorneys' fee recoveries on unsettled Hurricane Cases referred to them by Galindo shall likewise be deposited into the registry of the Bankruptcy Court (the **"Future Funds"**), pending further order of the Court regarding ownership of those funds.

25. As further set forth below, the Debtor asserts that it is entitled to the full amount of both the Deposited Funds and the Future Funds, as such funds represent compensation for legal services performed solely by MMA and litigation expenses incurred solely by MMA.

**GALINDO RECAPTURED CASES**

26. In addition to coordinating the transfer of cases to various Successor Firms, Galindo alleged that he independently recaptured approximately 130 of the former MMA/Galindo Cases after the entry of the Suspension Order (the **"Recaptured Cases"**) for his own handling. In these matters, Galindo has represented to MMA that he acted as sole counsel and has received attorneys' fees directly from the resolution of those claims.

27. Galindo has settled a portion of the Recaptured Cases and has collected attorneys' fees arising from those settlements (the **"Recaptured Funds"**). Galindo has failed to remit any portion of the Recaptured Funds to MMA.

28. The Recaptured Cases were originally developed by MMA, and in many instances, legal services were performed and expenses were incurred by MMA prior to Galindo's unilateral retention

of those matters. As discussed in greater detail below, MMA asserts both an equitable and contractual right to share in any attorneys' fees derived from these cases.

**MMA BANKRUPTCY FILING AND DISCLOSURE OF CLAIMS**

29. On April 9, 2024, the Debtor filed a Chapter 11 bankruptcy petition.

30. In its sworn bankruptcy schedules, the Debtor disclosed claims against Galindo for the improper retention of attorneys' fees and litigation expenses, as well as other related causes of action arising from Galindo's conduct before the bankruptcy filing.

31. Galindo has had actual and continuous notice of the Debtor's bankruptcy case since its inception and has been represented by legal counsel throughout the duration of the proceedings.

## CAUSES OF ACTION

## COUNT ONE: DECLARATORY JUDGMENT

32. The Debtor seeks a declaratory judgment affirming it's interest in the a) Successor Firm Transfers**;** (b) The Deposited Funds; and (c) The Recaptured Funds.

33. When considering a declaratory judgment action, the Court must engage in a three-step inquiry: (1) whether an "actual controversy" exists between the parties in the case; (2) whether it has authority to grant declaratory relief; and (3) whether "to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000).

**SUCCESSOR FIRM TRANSFERS**

34. As discussed above in Paragraphs 14 through 18 and incorporated by reference herein, following the entry of the Suspension Order, Galindo initiated direct negotiations with several law firms, including Daly & Black, AKD and Irpino, to assume representation for a number of the MMA/Galindo Cases (the **"Successor Firms"**).

35. These arrangements were made with the understanding that MMA would be compensated for its prior legal work in the MMA/Galindo Cases.

36. MMA is currently aware that Galindo has received no less than $58,324.18 from the Successor Firms (the **"Successor Firm Transfers"**).

37. Upon information and belief, Galindo has also received additional, undisclosed compensation from other Successor Firms, none of which has been remitted to MMA.

38. An actual and ongoing controversy exists between the Debtor and Galindo as to whether the Successor Firm Transfers constitute property of the bankruptcy estate.

39. The Bankruptcy Court has jurisdiction and authority to resolve this dispute pursuant to 28 U.S.C. §§ 157 and 1334. Specifically, 28 U.S.C. § 1334(e)(1) grants exclusive jurisdiction over all property of the estate, wherever located, as of the commencement of the bankruptcy case. See also *In re TMT Procurement Corp.*, 764 F.3d 512, 523 (5th Cir. 2014). The Debtor respectfully requests that the Court exercise its discretion to enter declaratory judgment declaring that the Successor Firm Transfers are property of the bankruptcy estate.

**THE DEPOSITED FUNDS**

40. As previously detailed in Paragraphs 19 through 25 and incorporated herein, following the commencement of its Chapter 11 case, the Debtor initiated settlement negotiations with several Successor Firms, including AKD and Irpino, regarding attorneys' fees generated from the Hurricane Cases originally handled by MMA and referred to them by Galindo.

41. After months of arm's-length negotiations, on August 15, 2025, the Debtor filed two motions to approve settlements with AKD and Irpino, respectively. As part of the settlement agreements, both firms agreed to deposit a combined $235,156.73 into the registry of the Bankruptcy Court (the **"Deposited Funds"**).

42. The settlements also require that 25 percent of all future attorneys' fees received by AKD and Irpino in unresolved Hurricane Cases originally brought to MMA by Galindo be deposited into the Court's registry (the "**Future Funds")**.

43. The purpose of these arrangements was to allow the Successor Firms to remove themselves from the fee dispute between MMA and Galindo, allowing the Bankruptcy Court to determine the rightful ownership of the Deposited Funds and the Future Funds.

44. An actual controversy exists between the Debtor and Galindo regarding entitlement to the Deposited Funds and Future Funds. The Debtor contends it performed all of the legal work and incurred all associated expenses related to the underlying cases, and that Galindo is not entitled to any portion of these funds under Texas or Louisiana law.

45. The Debtor therefore seeks a declaratory judgment affirming that the Deposited Funds and Future Funds are property of the bankruptcy estate.

46. The Bankruptcy Court has subject matter jurisdiction and exclusive authority to determine whether these funds constitute estate property pursuant to 28 U.S.C. § 1334(e). See *Poretto v. City of Galveston Park Bd. Of Trustees,* 113 F.4th 469, 484 (5th Cir. 2024).

**<u>THE RECAPTURED FUNDS</u>**

47. As previously described in paragraphs 26 through 28 and incorporated by reference, Galindo has admitted that he retained approximately 130 Hurricane Cases for his personal handling after the Suspension Order (the **"Recaptured Cases**").

48. Galindo has settled a substantial number of these cases and received attorneys' fees directly. He has not remitted any portion of these proceeds to MMA (the **"Recaptured Funds"**), even though MMA performed legal work on these cases.

49. The Debtor asserts an equitable and contractual interest in the Recaptured Funds. These cases

were initiated by MMA and expenses were incurred by MMA. Therefore, any fees collected therefrom must be apportioned between the parties.

50. In *Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102 (La. 1979), the Louisiana Supreme Court held that when multiple attorneys successively represent a client under a contingency fee arrangement, the total fee must be apportioned based on each attorney's contribution. Courts must consider the following factors from Rule 1.5 of the Louisiana Rules of Professional Conduct:

- Time and labor required;
- Novelty and difficulty of the issues;
- Skill requisite to perform the legal services;
- Amount involved and results obtained;
- Nature and length of the attorney-client relationship.

51. Additionally, *O'Rourke v. Cairns*, 683 So.2d 697, 702 (La. 1996), holds that even where an attorney is discharged for cause, apportionment may still be available based on the nature and circumstances of the discharge. The Debtor was not discharged for cause from these matters. Nevertheless, even if such a finding were made, the Debtor would still be entitled to a reasonable share of the fees generated based on its contributions under *Saucier* and *O'Rourke*.

52. An actual controversy exists between the Debtor and Galindo as to the estate's interest in the Recaptured Funds, and the Debtor seeks a declaratory judgment confirming that these funds are property of the estate and subject to apportionment.

53. As with the Successor Firm Transfers and Deposited Funds, the Bankruptcy Court has exclusive jurisdiction under 28 U.S.C. § 1334(e) and should exercise its discretion to resolve this dispute by declaratory judgment.

**COUNT TWO: TURNOVER OF ESTATE PROPERTY UNDER 11 U.S.C. §542**

54. The Debtor seeks an order compelling the turnover of the following property, which constitutes property of the bankruptcy estate under 11 U.S.C. § 541:

- The Successor Firm Transfers;
- The Deposited Funds; and
- The Recaptured Funds.

55. Section 541(a) of the Bankruptcy Code defines "property of the estate" to include all legal or equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1).

56. Section 542(a) mandates that an entity possessing property of the estate must deliver and account for such property, or its equivalent value, to the bankruptcy estate. 11 U.S.C. § 542.

**TURNOVER OF SUCCESSOR FIRM FUNDS**

57. As previously set forth in paragraphs 14 through 18 and incorporated herein by reference, following the Suspension Order, Galindo directly negotiated with various third-party law firms, including Daly & Black, AKD, and Irpino (collectively, the **"Successor Firms"),** regarding the transfer of Hurricane Cases previously handled by MMA.

58. To date, MMA is aware that Galindo received at least $58,324.18 from Daly & Black, AKD and Irpino (the **"Successor Firm Transfers"**).

59. Upon information and belief, Galindo not only received the Successor Firm Transfers, but it also received additional, undisclosed compensation beyond the payments known to have been made by Daly & Black, AKD, and Irpino. Despite repeated inquiries, Galindo has failed to fully disclose the scope or amount of funds received from these other firms.

60. The Successor Firm Transfers are property of the bankruptcy estate.

61. Galindo is in possession of the Successor Firm Transfers and is not entitled to receive any of these fees, as Galindo provided no legal work and is not entitled to attorney's fees.

62. In Louisiana, each attorney involved in a joint representation must render meaningful legal services in order to share in any portion of the fee. Galindo did not meet this standard. See Rule Louisiana State Bar Association Article XIV 1.5; *Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102, 118 (La. 1978).

63. Furthermore, under Texas Disciplinary Rule of Professional Conduct (TDRPC) Rule 1.04, a referring attorney may share fees only if: (a) the fee division is in proportion to the professional services performed by each lawyer; or (b) the lawyers have entered into an arrangement whereby they assume joint responsibility for the representation. Comment 13 to TDRPC Rule 1.04 clarifies the meaning of "joint responsibility," explaining that it entails ethical responsibilities for the representation and that a mere referral is insufficient. The referring lawyer must be actively involved in ensuring proper representation and communication. This includes: (a) maintaining ongoing communications with the client; (b) monitoring the matter throughout the representation; (c) responding to client inquiries; and (d) assisting the lead counsel as necessary.

64. The Debtor asserts that Galindo provided no meaningful legal services and did not assume joint responsibility in the Successor Cases. The funds it has received should be turned over to the Debtor.

65. Accordingly, the Debtor respectfully requests that the Court enter an order compelling Galindo to:

- (a) provide a complete accounting of all funds it received from all Successor Firms, including but not limited to AKD, Irpino, and Daly & Black; and
- (b) turnover to the Debtor all funds it has received to date from the Successor Firms.

**TURNOVER OF THE DEPOSITED FUNDS**

66. As discussed above in Paragraphs 19 through 25, and incorporated herein solely for this section related to the Deposited Funds, following the commencement of its Chapter 11 bankruptcy case, the Debtor initiated legal proceedings against several Successor Law Firms seeking the turnover of attorneys' fees and litigation expenses earned in the Hurricane Cases, which MMA contends are property of the bankruptcy estate.

67. On August 15, 2025, MMA filed two motions to approve settlements with Irpino and AKD. Under the terms of each of the settlement agreements, Irpino and AKD agreed to deposit a total of $235,156.73 in the registry of the Court (the **"Deposited Funds").** The express purpose of this arrangement was to allow Irpino to withdraw from the dispute between MMA and Galindo, leaving the Court to determine the rightful owner of the Deposited Funds.

68. The Settlement Agreement between MMA and both AKD and Irpino also provides that 25% of all future recoveries from cases referred to them by Galindo in the Hurricane Cases that have not yet settled shall be deposited in the registry of the Court (the **"Future Funds").** The purpose of this provision is to allow the Court to make a future determination as to whether the Future Funds belong to MMA or Galindo.

69. As discussed above in Paragraphs 62 through 64 and incorporated herein by reference, Galindo is not entitled to the Deposited Funds or the Future Funds under either Louisiana or Texas law, as it provided no meaningful legal services and did not assume joint responsibility in the Successor Cases. Accordingly, all funds deposited in the registry of the Court by AKD and Irpino should be turned over to the Debtor.

70. Therefore, the Debtor respectfully requests that the Court enter an order compelling the Clerk of Court to turn over the entirety of the Deposited Funds to MMA, along with all Future Funds that

may be deposited in the registry of the Court by AKD and Irpino pursuant to the Settlement Agreement.

**<u>TURNOVER OF THE RECAPTURED FUNDS.</u>**

71. As previously described in Paragraphs 26 through 28 and incorporated herein by reference, Galindo alleges that it retained approximately 130 Hurricane Cases for its personal handling following the Suspension Order (the "**Recaptured** Cases").

72. Galindo claims that it has settled a substantial number of the Recaptured Cases and collected attorneys' fees without remitting any portion of those fees to MMA (the **"Recaptured Funds").** These fees were generated from cases that were originally developed, legally serviced, staffed, and expensed by MMA before Galindo allegedly assumed sole control. MMA asserts both an equitable and contractual right to share in those proceeds based on the substantial legal work it performed prior to Galindo's unilateral retention of the cases.

73. Unlike the Deposited Funds and the Successor Firm Funds, the Recaptured Funds are distinguishable in that Galindo contends it personally performed legal work on these 130 cases after the Suspension Order was entered and did not refer them to Successor Firms.

74. Under Louisiana law, when two attorneys provide legal services to the same client on a contingency-fee basis and one attorney is discharged before resolution, the client remains obligated to pay only one contingency fee. The Court is then tasked with allocating the fee between the attorneys. See *Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102, 108 (La. 1979).

75. This framework ensures a reasonable division of fees based on each attorney's contributions. If the first attorney was not discharged for cause, this analysis concludes the determination. However, if discharged for cause, the court must assess the nature and gravity of the discharge to determine if the discharged attorney is entitled to any fees. *O'Rourke v. Cairns,* 683 So. 2d 697, 702 (La. 1996).

76. The Debtor respectfully requests that the Court issue an order compelling Galindo to: (a) provide a comprehensive accounting of all funds received in connection with the Recaptured Cases, and (b) order Galindo to immediately deliver all estate property to the Debtor, specifically the turnover of the bankruptcy estate's interest in the properly apportioned fees and costs associated with the Recaptured Cases.

**CAUSE OF ACTION THREE: FRAUDULENT TRANSFER PURSUANT TO 11 U.S.C. §548(A(1)(b) AND SECTION 550**

77. The Debtor brings this fraudulent transfer action pursuant to 11 U.S.C. § 548(a)(1)(B) and § 550 against Galindo.

78. Section 548(a)(1)(B) of the Bankruptcy Code provides that a Debtor may avoid any transfer: (1) incurred by the debtor; (2) within two years of the petition date; (3) for which the debtor received less than reasonably equivalent value; and (4) which was made when the debtor was insolvent, or which rendered the debtor insolvent.

79. The Debtor seeks to avoid a total of $683,000.00 in pre-petition transfers to Galindo.

80. Between July 19, 2022, and January 27, 2023, the Debtor transferred approximately $683,000.00 of its funds to Galindo (the **"Galindo Transfers").**

81. The Galindo Transfers occurred within the two-year lookback period preceding the Debtor's bankruptcy filing in April 2024, satisfying the temporal element of 11 U.S.C. § 548(a)(1)(B).

82. At the time the Galindo Transfers were made, the Debtor was insolvent. Specifically, the Debtor owed EAJF in excess of $18 million, a liability that far exceeded the value of its assets.

83. The Debtor did not receive reasonably equivalent value in exchange for the Galindo Transfers. As discussed above, Galindo performed no legal work and incurred no expenses in connection with the Galindo/MMA Cases that would justify the payments.

84. At best, Galindo may argue that he referred the cases to MMA; however, under both Louisiana and Texas law, attorneys are not permitted to share in contingency fees unless they provide legal representation or assume joint responsibility for the representation. Galindo failed to do either.

85. Therefore, the Debtor respectfully requests that the Court: (a) avoid the Galindo Transfers pursuant to 11 U.S.C. § 548(a)(1)(B); (b) order the recovery of such avoided transfers pursuant to 11 U.S.C. § 550; and (c) in the alternative, enter a money judgment in favor of the Debtor and against Galindo in the amount of $683,000.00.

## CAUSE OF ACTION FOUR: FRAUDULENT TRANSFER PURSUANT TO TEX. BUS. & COMM. CODE 24.006(a) and 11 U.S.C. §550

86. The Debtor brings this fraudulent transfer action against Galindo pursuant to 11 U.S.C. § 544(a), Texas Business & Commerce Code § 24.006(a), and 11 U.S.C. § 550.

87. To establish a claim under TEX. BUS. & COMM. CODE, § 24.006(a), the Debtor must show that the transfer made by the Debtor was fraudulent as to a creditor whose claim arose before the transfer without (1) receiving a reasonably equivalent value in exchange for the transfer, and the (2) the debtor became insolvent as a result of the transfer.

88. Here, the Debtor transferred $683,000.00 to Galindo between July 19, 2022, and January 27, 2023 (the **"Galindo Transfers"**).

89. The Galindo Transfers occurred within four years of the petition date. The Debtor filed for bankruptcy on April 9, 2024, and the transfers occurred between July 2022 and January 2023, placing them squarely within the lookback period allowed under § 544(b) and applicable Texas law.

90. The Galindo Transfers occurred after the Debtor had incurred its debt to EAJF, whose claim arose prior to the transfers. Accordingly, the transfers were made at a time when the Debtor was already obligated to a pre-existing creditor.

91. The Debtor did not receive reasonably equivalent value in exchange for the Galindo Transfers. As discussed above, Galindo performed no legal work and incurred no expenses in connection with the Galindo/MMA Cases. At most, Galindo may argue that he referred the cases to MMA; however, under both Louisiana and Texas law, attorneys may not share in contingency fees unless they perform legal work or assume joint responsibility for client representation. Galindo did neither and therefore was not entitled to compensation.

92. Moreover, the transfers were made at a time when the Debtor was insolvent. At the time of the Galindo Transfers, the Debtor owed EAJF in excess of $18 million—an amount that exceeded the value of the Debtor's assets.

93. The Debtor therefore seeks a judgment avoiding the Galindo Transfers under 11 U.S.C. § 544 and Tex. Bus. & Comm. Code § 24.006(a). Pursuant to 11 U.S.C. § 550, the Debtor further requests that the Court order the return of the Galindo Transfers to the bankruptcy estate. In the alternative, the Debtor seeks a money judgment against Galindo in the amount of $683,000.00, plus reasonable attorneys' fees and costs incurred in prosecuting this adversary proceeding, as permitted under Tex. Bus. & Comm. Code § 24.005(a).

## <u>CAUSE OF ACTION FIVE: ALTERNATIVE RELIEF – BREACH OF CONTRACT</u>

94. MMA seeks alternative relief in the event that GLF is no longer in possession of the fees related to the Recaptured Cases. Under such circumstances, MMA asserts a claim against Galindo for breach of contract.

95. Galindo and MMA entered into valid and enforceable contracts with the clients in the Recaptured Cases, under which MMA was entitled to receive 37.5% of the attorneys' fees. These contracts established clear rights and obligations for both parties.

96. These agreements are valid contracts under Texas law, meeting all essential elements of a

contract including offer, acceptance, consideration, and mutual intent to be bound. Galindo does not dispute the existence or validity of these contracts.

97. MMA fully performed its contractual obligations by providing legal services in the Recaptured Cases. Galindo, however, breached these contracts by failing to remit the agreed-upon 37.5% share of the attorneys' fees to MMA, thereby depriving MMA of its contractual entitlement.

98. Under Texas law, "[a] breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform." *Tabe v. Tex. Inpatient Consultants, LLLP*, 555 S.W.3d 382, 385 (Tex. App.—Houston [1st Dist.] 2018, pet. denied), citing *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc*., 184 S.W.3d 760, 769-70 (Tex. App.—Dallas 2005, pet. denied). Here, Galindo's failure to pay MMA the agreed fees constitutes a material breach of the agreements.

99. MMA has suffered damages as a direct and proximate result of Galindo's breach, including the loss of attorneys' fees to which MMA was contractually entitled. These damages are recoverable under Texas contract law. See *Signature Indus. Servs., LLC v. Int'l Paper Co.*, 638 S.W.3d 179 (Tex. 2022).

100. MMA is also entitled to recover reasonable and necessary attorneys' fees incurred in enforcing its contractual rights, as provided by TEX. CIVIL P. & REM. CODE § 38.001(8).

101. Therefore, MMA seeks damages against Galindo, including actual damages for unpaid attorneys' fees and reasonable attorneys' fees and costs incurred in connection with this cause of action.

**WHEREFORE**, the Debtor respectfully requests that the Court enter judgment in its favor and against Galindo by declaring that the Successor Firm Transfers, the Deposited Funds and Future Funds, and the Recaptured Funds constitute property of the Debtor's bankruptcy estate; ordering Galindo to provide a full and complete accounting of all such funds received and to immediately turn

over all estate property, including the Successor Firm Transfers, Deposited Funds, Future Funds, and Recaptured Funds, to the Debtor pursuant to 11 U.S.C. § 542; avoiding and setting aside the approximately $683,000.00 in transfers made to Galindo within the applicable lookback periods under 11 U.S.C. §§ 544, 548, and 550, as well as Texas Business & Commerce Code § 24.006(a), and ordering the recovery of such transfers to the estate or, alternatively, entering a money judgment against Galindo in that amount plus reasonable attorneys' fees and costs; awarding damages for breach of contract in the event that the fees related to the Recaptured Cases are no longer in Galindo's possession, including actual damages and attorneys' fees pursuant to Texas law; and granting such other and further relief, at law or in equity, to which the Debtor may show itself justly entitled.

Dated: August 22, 2025.

Respectfully submitted,

By: */s/ Miriam T. Goott*
Miriam T. Goott
attorney-in-charge
SBN 24048846
**COUNSEL FOR THE PLAINTIFF MMA LAW FIRM, PLLC**

OF COUNSEL:
WALKER & PATTERSON, P.C.
P.O. Box 61301
Houston, TX 77208
mgoott@walkerandpatterson.com
713.956.5577 (telephone)
713.956.5570 (fax)